# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 17-03102-01-CR-S-BCW |
| DUSTIN S. PIPER, | ) | |
| Defendant. | ) | |

## REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE

Before the Court is Defendant Dustin S. Piper's Motion to Suppress Evidence (Doc. 39), which has been referred to the undersigned for preliminary review pursuant to 28 U.S.C. § 636(b). Defendant Piper moves to suppress all evidence obtained as a result of the search warrant issued on March 1, 2017 and executed by the Polk County Sheriff's Office ("PCSO") on March 9, 2017. The undersigned held an evidentiary hearing on the Motion on March 19, 2019. (*See* Doc. 55.) Defendant Piper was present with his attorney, Donald R. Cooley, and the United States Government was represented by Assistant United States Attorney Abram McGull, II. (*Id.*) The Court heard testimony from Ken Minica, a detective with the PCSO. (*Id.*) For the reasons set forth below, it is **RECOMMENDED** that Defendant's Motion (Doc. 39) be **DENIED**.

## I. Findings of Fact[1]

On March 1, 2017, Detective Ken Minica with the PCSO prepared an affidavit to obtain a warrant for the search of Dustin Piper's residence, outbuilding, and person for methamphetamine, marijuana, drug paraphernalia, and other equipment commonly related to the use and distribution

---

[1] The facts set forth herein are taken from the testimony adduced and the exhibits admitted at the hearing on the instant Motion. The hearing transcript appears as Doc. 55. The Government's exhibit index appears as Doc. 54. Defendant did not offer any exhibits at the hearing.

of methamphetamine or other controlled substances. In addition to writing the affidavit, Minica prepared the actual search warrant himself. A Polk County prosecuting attorney reviewed the affidavit and then delivered both the affidavit and warrant together to Polk County Circuit Judge John Porter who signed the warrant the same day, March 1, 2017.

In support of the warrant, Minica's affidavit outlines information gathered from five total informants: two past "reliable informants" who are unnamed, Courtney Smith, Aaron Rhoads, and another unnamed informant who was arrested on undisclosed charges the day before the warrant application. The affidavit provides, in relevant part, the following:

> In the past Polk County Detectives worked with Comet Drug Task Force Officers who used two informants who were proven reliable by conducting controlled buys from David[2] Pipper [sic]. This information resulted in the service of search warrants and the seizure of controlled substances, in particular, methamphetamine, and prosecutable felony arrests. Both of these informants had conducted controlled buys from David Piper. They told Detectives of the Polk County Sheriff's Office that David Piper gets his methamphetamine from Texas, concealed in fire extinguisher tanks. Both reliable informants also said that David Piper's son, Dustin Piper, did most of the local methamphetamine sells [sic].[3]
>
> On 05-03-16 the Polk County Sheriff's Office along with the COMET Drug Task Force served a search warrant on David Piper's residence located at 4172 South 140th Road in Bolivar, Polk County, Missouri. Detectives found several fire extinguisher tanks cut open but were unable to locate any sizeable amount of methamphetamine. Detectives were told again that the methamphetamine was stored at Dustin Piper's residence.
>
> In November of 2016 the Drug Enforcement Agency (DEA) intercepted three pounds of methamphetamine intended for David Piper. David Piper was arrested and is currently out of jail on a federal bond.
>
> Recently[4] several interviews to include Courtney Smith and Aaron Rhoads have stated that Dustin Piper sell[s] methamphetamine and is the "Big Dog" in this area. Courtney Smith advised that she waiting [sic] in the vehicle on one occasion when another subject with her brought [sic] methamphetamine from Dusty Piper.[5]

---

[2] According to the affidavit, David Piper is Defendant Dustin Piper's father.
[3] There is no indication of when this statement was actually made to law enforcement.
[4] Minica clarified at the hearing that the "recent" interviews with Courtney Smith and Aaron Rhoads were "within a week or two" of the warrant application. (Doc. 55 at 36:6-14.)
[5] Minica testified that Courtney Smith provided directions to Dustin Piper's residence. (Doc. 55 at 35.)

2

> On 02-28-17, a person was arrested who wishes to remain anonymous for his/her safety. The informant said he/she had been to Dustin Pipers [sic] house within the last four days and observed a canister which contained over an estimated three pounds of methamphetamine. The informant stated he/she observed several different sizes of plastic baggies, a large digital scale and other paraphernalia items at the residence. The informant advised that he/she was at Dustin Piper's residence approximately four weeks ago and he/she observed and what he/she estimated to be over ten pounds of methamphetamine. The informant advised that he/she has been to Dustin Piper's residence over thirty times in the last year and had never been there when methamphetamine wasn't present at the residence. The informant stated that several people are in and out of the residence on a daily basis. The informant advised that Dustin Piper has lookouts and has at least two surveillance camera's [sic] along with police scanners at the residence. The informant stated that Dustin Piper has a chemical acid that is kept inside the residence to destroy methamphetamine if law enforcement show [sic] up at his residence. The informant also stated that there are guns inside the residence and Dustin Piper carries a Keltic pistol on his person at all times.
>
> Based on several interviews of recent arrested people or potential informants, the information on proven reliable past informants, and the new information received on 02-28-17 I believe there is evidence of possession of controlled substances, possession of drug paraphernalia, and evidence of a public nuisance drug house at the residence of Dustin Piper. Therefore I request the issuance of a No Knock search warrant for the residence commonly known as 4213 South 140th Road in Bolivar, Polk County Missouri to search for the above listed items.

(*See* Doc. 54, Gov. Ex. 1.)

At the time of the application, Minica had been a police officer for approximately ten years and had attended "numerous schools and seminars for hundreds of hours of training" related to various fields of law enforcement, including "narcotics recognition and investigations." (*Id.*) Minica stated he had "been involved in several search warrants" and that one of his duties as an investigator is "developing probable cause for cases." (*Id.*) He stated that he "[has] the knowledge, understanding and experience to work crime scenes and search warrant scenes to process, recover, and seize stolen property, controlled substances, [and] drug paraphernalia . . . ." (*Id.*)

Between the affidavit and the warrant, the only place the full address of Dustin Piper's residence, 4213 South 140th Road, Bolivar, Missouri, appears is the previously-quoted probable

3

cause section of the affidavit. Because this section of the affidavit was not incorporated into the warrant, the full address is omitted from the actual warrant. Detective Minica admitted at the hearing that this was an oversight on his part. (Doc. 55 at 33-34.) Similarly, Judge Porter simply signed the warrant as prepared by Minica, without the full address. The following description of the property, however, was included in both the affidavit and warrant:

> A single trailer white in color positioned east to west on the property. The front door is located on the south side of the trailer with a wood ramp leading to the doorway. There is a large window on the east end of the trailer. The residence has an outbuilding located next to the trailer on the north side with a tin roof. The numbers 4213 are displayed on a black mailbox in black letters with a white back ground. The mail box is located on the east side of the trailer where the white chat driveway begins at the road.

(*See* Doc. 54, Gov. Ex. 1.)

Minica testified that he knew Dustin Piper lived at 4213 South 140th Road in Bolivar because officers had talked with Dustin at "his residence" just two months prior in January regarding a separate investigation. (Doc. 55 at 5-6.) PCSO officers had also observed Dustin Piper at the same location "just prior" to application for the warrant on March 1, 2017. (*Id.* at 6.) Minica personally observed Dustin outside the trailer on one occasion and met him in his vehicle coming from the residence on another occasion. (*Id.*) Minica also testified that there was no doubt in his mind as to the location of the premises and "did not think there [was] anything wrong with the search warrant" at the time the search was executed. (*Id.* at 14-16.)

Pursuant to the warrant, PCSO officers, including Minica, executed the search of 4213 South 140th Road in Bolivar on March 9, 2017, while Defendant was on the premises. Evidence was seized, and a grand jury charged Defendant on August 15, 2017, with conspiracy to distribute 500 grams or more of methamphetamine, possession with intent to distribute 50 grams or more of

4

methamphetamine, and possession of a firearm in furtherance of a drug trafficking crime. (Doc. 1.) Defendant was subsequently arrested on August 17, 2017. (Doc. 4.)

## II. Conclusions of Law

The Fourth Amendment to the United States Constitution protects against "unreasonable searches and seizures" and states that "no Warrants shall issue, but upon probable cause . . . and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Generally, evidence seized as the result of an unconstitutional search cannot be used against the defendant and must be suppressed. *See United States v. Riesselman*, 646 F.3d 1072, 1078 (8th Cir. 2011).

Defendant argues that all evidence should be suppressed because (1) the warrant failed to meet the particularity requirement of the Fourth Amendment and (2) the affidavit lacked the necessary information to establish probable cause. In response, the Government argues that the warrant provided a sufficient description of the place to be searched and that the supporting affidavit established probable cause. Additionally, the Government contends that even if the warrant is found invalid for lack of particularity or probable cause, the *Leon* good-faith exception precludes suppression of the evidence. The Court takes up the arguments below.

### A. Particularity of the Warrant

Defendant argues that the search warrant failed to meet the particularity requirement of the Fourth Amendment because it omitted the full address of Defendant's residence. The case law is clear that "[t]he test for determining the sufficiency of the description of the place to be searched is whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is

5

any reasonable probability that another premise[s] might be mistakenly searched."[6] *United States v. Skarda*, 845 F.3d 370, 377 (8th Cir. 2016) (quoting *United States v. Gitcho*, 601 F.2d 369, 371 (8th Cir. 1979)). "The particularity requirement is a standard of practical accuracy rather than a hypertechnical one." *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011) (internal quotes omitted). The "total circumstances surrounding the case" are taken into account when determining whether a warrant fails for particularity. *Id.*

Here, the warrant's description of the premises was certainly detailed and particular. It described the physical attributes of the trailer, the way in which it was positioned on the property, its adjoining outbuilding, the driveway, and the black mailbox with the numbers 4213. Defendant does not claim that the description was inaccurate. The only thing missing from the description in the warrant was the street name, city, county, and state, which the affidavit included. Detective Minica, who prepared both the affidavit and warrant, testified the failure to include the full address in the warrant was an oversight on his part.

Where the warrant contains a technical error or omission regarding the description of the place to be searched, courts often consider whether the officers who executed the warrant personally knew which premises was intended to be searched. *See, e.g.*, *United States v. Clement*, 747 F.2d 460, 461 (8th Cir. 1984); *Gitcho*, 601 F.2d at 372. In *United States v. Bonner*, 808 F.2d 864 (1st Cir. 1986), *cert. denied*, 481 U.S. 1006 (1987), the First Circuit, relying on *Gitcho*, upheld a search warrant that contained a detailed description of the premises but failed to include the full address, which the affidavit included. The court found that the warrant "suffered from a minor,

---

[6] A majority of Circuits have applied the same two-prong test. *See, e.g.*, *United States v. Crumpton*, 824 F.3d 593, 612 (6th Cir. 2016); *United States v. McLellan*, 792 F.3d 200, 212 (1st Cir. 2015); *United States v. McMillian*, 786 F.3d 630, 640 (7th Cir. 2015); *United States v. Garcia*, 707 F.3d 1190, 1197 (10th Cir. 2013); *United States v. Voustianiouk*, 685 F.3d 206, 212 (2d Cir. 2012); *United States v. Brobst*, 558 F.3d 982, 992 (9th Cir. 2009); *United States v. Johnson*, 437 F.3d 69, 73 (D.C. Cir. 2006); *United States v. Gilliam*, 975 F.2d 1050, 1055 (4th Cir. 1992); *United States v. Avarello*, 592 F.2d 1339, 1344 (5th Cir. 1979).

6

technical omission." *Id.* at 866. The court further explained that there was "no risk" that officers would "be confused and stumble into the wrong house," because the officers "knew exactly which house they wanted to search." *Id.* at 866-67.

Likewise, here, Detective Minica and other PCSO officers knew which premises they intended to search, were personally familiar with the location, and understood the warrant to authorize a search of 4213 South 140th Road in Bolivar of Polk County, Missouri. In addition to preparing the search warrant, Minica was one of the officers who executed it. Other PCSO officers were familiar with the location because they had observed Defendant at the premises "just prior" to the warrant application. The warrant simply suffered from a "minor, technical omission."

Because the "executing officer[s]" in this case were personally familiar with the location to be searched, the description provided in the warrant was "described with sufficient particularity as to enable the executing officer[s] to locate and identify the premises with reasonable effort." *Skarda*, 845 F.3d at 377. There was also no "reasonable probability that another premise[s] might be mistakenly searched." *Id.* In fact, it would have been virtually impossible for an officer *not* familiar with the intended location to have mistakenly searched another location, given the physical description of the property and the street number 4213 located on the mailbox. Accordingly, the Court finds that the warrant meets the particularity requirement.[7]

### B. Probable Cause

Defendant also argues that probable cause did not exist to support the warrant because the information in the affidavit was not reliable and the affidavit failed to link Defendant to the address

---

[7] Although the Court decides this issue in favor of the Government, it is worth noting their alternative argument, which ultimately fails. The Government argues that the potential defect in the warrant could be cured by the affidavit because it accompanied the warrant and was incorporated by reference in the warrant. While it is true that an affidavit "may cure the particularity defect of the warrant if the affidavit accompanies the warrant *and* the warrant uses suitable words of reference to incorporate the affidavit," *United States v. Thomas*, 263 F.3d 805, 808 (8th Cir. 2001) (emphasis added), the warrant to search Defendant's residence did not contain "suitable" enough language to successfully "incorporate" the affidavit. *See United States v. Szczerba*, 897 F.3d 929, 937 (8th Cir. 2018).

7

to be searched. Probable cause exists if there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Bradley*, 924 F.3d 476, 480 (8th Cir. 2019). Determining probable cause is a practical, common-sense decision based on the totality-of-the-circumstances. *Gates*, 462 U.S. at 238; *see United States v. Buchanan*, 574 F.3d 554, 561 (8th Cir. 2009). However, "only that information which is found within the four corners of the affidavit may be considered." *United States v. O'Dell*, 766 F.3d 870, 874 (8th Cir. 2014). A reviewing court pays deference to the issuing magistrate's determination of probable cause and simply ensures that the magistrate had a "substantial basis" for concluding that probable cause existed. *United States v. Stevens*, 530 F.3d 714, 718 (8th Cir. 2008) (quoting *Gates*, 462 U.S. at 236).

After reviewing the information contained within the four corners of the affidavit, the Court concludes the issuing judge overlooked a critical aspect of probable cause and, thus, did not have a substantial basis to find it existed. The affidavit requested a search warrant for a specific address but did not contain the necessary facts linking Defendant to that address. Though the Court ultimately concludes the *Leon* good faith exception saves the evidence from suppression, the Court takes up the parties' arguments below.

Defendant largely attacks the credibility of the informants who provided information to law enforcement and contends that their information is unreliable. While the core question in assessing probable cause based on informant information is whether the information is reliable, *O'Dell*, 766 F.3d at 874, their reliability, veracity, and basis of knowledge are not "independent, essential elements" in finding probable cause. *United States v. Robertson*, 39 F.3d 891, 893 (8th Cir. 1994). A totality-of-the-circumstances analysis prohibits an "excessively technical dissection of informants' tips" that views "bits and pieces of information in isolation." *Buchanan*, 574 F.3d

at 562-63 (internal quotes omitted); *see also Gates*, 462 U.S. at 234-35. Furthermore, information by more than one informant may be reciprocally corroborative if the statements are consistent with one another and sufficiently detailed. *United States v. Fulgham*, 143 F.3d 399, 401 (8th Cir. 1998) (finding probable cause where "information given by the first informant was corroborated with specific, consistent details provided by the second informant").

Here, the affidavit contained information from five total informants. The specific and detailed information provided by the last unnamed informant corroborated the statements of previous informants. Taken together, the information was sufficiently reliable to believe that Dustin Piper possessed and distributed methamphetamine at the time of the warrant application. Furthermore, there was a "fair probability" that methamphetamine and drug paraphernalia would be found at "Dustin Piper's residence." However, the affidavit did not contain the necessary facts connecting "Dustin Piper's residence" to the specific address, "4213 South 140th Road in Bolivar, Polk County[,] Missouri." Consequently, there was not a "fair probability that contraband or evidence of a crime [would] be found in a particular place." *Gates*, 462 U.S. at 238.

To find probable cause, "there must be evidence of a nexus between the contraband and the place to be searched." *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). Here, the affidavit concludes,

> Based on several interviews of recent arrested people or potential informants, the information on proven reliable past informants, and the new information received on 02-08-17[,] I believe there is evidence of possession of controlled substances, possession of drug paraphernalia, and evidence of a public nuisance drug house at the residence of Dustin Piper. *Therefore*[,] I request the issuance of a No Knock search warrant for the residence commonly known as 4213 South 140th Road in Bolivar, Polk County[,] Missouri to search for the above listed items.

(Doc. 54, Gov. Ex. 1) (emphasis added). It seems clear by the use of "therefore" that Detective Minica *believed* Dustin Piper resided at that address, but nothing in the affidavit explains why he

believed this.[8] Looking only within the four corners of the affidavit, an issuing judge would have to infer that law enforcement confirmed Dustin Piper's residency at that location. While judges can "draw reasonable inferences" in determining probable cause, *United States v. Summage*, 481 F.3d 1075, 1078 (8th Cir. 2007), the Court believes this is not an inference the Fourth Amendment allows judges to make. *See, e.g.*, *United States v. Rose*, 714 F.3d 362 (6th Cir. 2013) (declining to find probable cause on similar facts). Therefore, the issuing judge here did not have a substantial basis to conclude probable cause existed. Although the missing information precludes a finding of probable cause, it is the kind of error the *Leon* good faith exception was designed to cure.

### C. *Leon* Good Faith Exception

Even though the Court is not persuaded the affidavit establishes a sufficient nexus between Defendant and the place to be searched, the *Leon* good-faith exception applies here and precludes suppression of the evidence. The Supreme Court, recognizing that the purpose of the exclusionary rule is to deter police misconduct, has repeatedly made clear that the rule does not apply in cases where "the police acted 'in objectively reasonable reliance'" of a search warrant issued by a judge or magistrate. *Herring v. United States*, 555 U.S. 135, 142 (2009) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). Evidence seized as a result of such good-faith reliance will thus be admitted unless:

> (1) the supporting affidavit or testimony includes a false statement made knowingly and intentionally or with reckless disregard for the truth to mislead the issuing judge; (2) the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

---

[8] Here, the issuing judge had only the affidavit to rely on. Detective Minica did not have contact with the judge and therefore could not have explained why he believed Dustin Piper resided at the address. (Doc. 55 at 11-12, 25.)

10

*United States v. Ortiz-Cervantes*, 868 F.3d 695, 702-03 (8th Cir. 2017) (internal quotes omitted); *see also Leon*, 468 U.S. at 923.

Notwithstanding its exceptions, the good-faith inquiry "is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal in light of all the circumstances." *Herring*, 555 U.S. at 145 (internal quotes omitted). Circumstances include "what the affiant knew but did not include in the application for the warrant." *United States v. Thurman*, 625 F.3d 1053, 1057 (8th Cir. 2010).

Here, Detective Minica and other PCSO officers had sufficient reasons to believe Dustin Piper resided at the specific address, but those reasons were simply not included in the affidavit. Minica testified at the evidentiary hearing that he knew Dustin Piper lived at 4213 South 140th Road in Bolivar because officers had talked with Dustin at "his residence" just two months prior regarding a separate investigation. PCSO officers also observed Dustin Piper at that location "just prior" to applying for the present warrant. Minica observed Dustin outside the "trailer" on one occasion and met him in his vehicle coming from the residence another time. Furthermore, Minica testified that one of the informants, Courtney Smith, described where Dustin Piper's residence was located.[9] Although Minica failed to include any of this information in his affidavit, it sufficiently established a nexus between Defendant and the place to be searched, and Minica properly relied on it when executing the search warrant.

More generally, Defendant essentially argues that the supporting affidavit here was "so lacking in indicia of probable cause" that reliance on the search warrant was "entirely unreasonable." The Court disagrees. Detective Minica's affidavit was more than a "bare bones" affidavit. *See Leon*, 468 U.S. at 926. It contained information gathered from five total informants,

---

[9] Another informant, the most recent unnamed informant, may have also given directions to the residence, but Minica gave conflicting testimony as to whether he did or not. (*See* Doc. 55 at 30, 34-35.)

11

one of which gave a specific and detailed firsthand account. That informant stated that he or she had personally been to Dustin Piper's residence on multiple occasions, including "within the last four days" where he or she saw over "three pounds" of methamphetamine. The informant also provided specific information that only someone familiar with Defendant would know, including that he "carries a Keltic pistol on his person at all times," that he "has a chemical acid that is kept inside the residence to destroy methamphetamine if law enforcement show up at his residence," and that he keeps various other items in the house commonly associated with the distribution of illegal drugs. The other four informants described in the affidavit reciprocally corroborated the fact that Defendant is known for selling methamphetamine. Based on these facts, a police officer's belief that probable cause existed here would not be "entirely unreasonable."

Ultimately, it cannot be said that a "reasonably well-trained officer would have known that the search was illegal in light of all the circumstances." With prior experience in "developing probable cause," Minica had no reason to question the issuing judge's determination in this case. Minica testified he "did not think there [was] anything wrong with the search warrant." Assuming Minica did not knowingly and intentionally mislead the issuing judge, which Defendant does not allege, the PCSO officers' reliance on this judicially-issued search warrant is the exact kind of reasonable reliance the Supreme Court had in mind in *Leon*. Neither does Defendant allege that the judge "wholly abandoned his judicial role in issuing the warrant" or that the warrant was "so facially deficient that no police officer could reasonably presume the warrant to be valid." Therefore, PCSO officers objectively and reasonably relied on a search warrant issued by a neutral magistrate, and the evidence should be admitted.

Although Defendant makes no argument regarding the particularity issue and *Leon*, it is worth noting that warrants failing for lack of particularity have also been upheld by the good-faith

exception.  *See, e.g.*, *Massachusetts v. Sheppard*, 468 U.S. 981 (1984); *United States v. Thomas*, 263 F.3d 805 (8th Cir. 2001); *United States v. Curry*, 911 F.2d 72 (8th Cir. 1990).  In *Curry*, the search warrant contained neither an address nor a description of the property.  911 F.2d at 76.  Nevertheless, the court upheld the warrant because (1) the accompanying affidavit sufficiently described the property, and (2) the same officer who prepared the affidavit was the officer who ultimately directed the search.  *Id.* at 78.

Likewise, here, the accompanying affidavit sufficiently described the property, and PCSO officers were personally familiar with the location.  The issuing judge simply failed to catch Minica's omission of the address in the warrant, and PCSO officers reasonably relied on his failure to catch the error.  Therefore, even if the warrant's description of the premises was insufficiently particular, the good-faith exception would permit admission of the evidence.

### III. Recommendation

For the foregoing reasons, it is hereby **RECOMMENDED** that Defendant's Motion to Suppress Evidence (Doc. 39) be **DENIED**.

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: July 30, 2019